VISIGRAPH TYPEWRITER MANUFACTURING COMPANY, INC., Plaintiff, *v.* THE C. SPIRO MANUFACTURING COMPANY, CHARLES SPIRO, FREDERICK L. SPIRO, WALTER J. SPIRO and WILLIAM L. SPIRO, Defendants.

Supreme Court, New York Special Term, December, 1923.

*Principal and agent — action to compel defendant corporation and its directors to account for profits made on sale of certain assets owned by plaintiff — complaint alleged breach of trust and violation of agreement for sale of plaintiff's property to defendant corporation for $10,000 if defendant corporation was unable to sell assets within six months period for $25,000 — knowledge of pending sale of assets for $150,000 concealed from plaintiff until expiration of six months period and the acquisition by defendant of assets for $10,000 — defendant corporation agent of plaintiff and amenable to obligations imposed on fiduciary — offer of sale at $150,000 made for plaintiff's benefit — defendant corporation failed to meet burden of showing value of allowance for inventions — plaintiff entitled to accounting and judgment.*

ACTION for accounting.

*Cook, Nathan & Lehman (Harold Nathan,* of counsel), for plaintiff.

*Justus Sheffield,* for defendants.

MITCHELL, J. The plaintiff Visigraph Typewriter Manufacturing Company, Inc., has brought this action against the C. Spiro Manufacturing Company, a domestic corporation, and certain individuals who at the times mentioned in the complaint owned all or substantially all of the stock of the said defendant corporation, constituted its board of directors and managed its affairs. The purpose of the action is to compel these defendants to account for the profits which they made on the resale of certain assets of the plaintiff corporation consisting of " certain patents, tools, parts and appurtenances, belonging to the Visigraph typewriting machine," which were acquired by the defendant corporation under the terms of a written agreement entered into between the plaintiff and defendant corporation on May 26, 1919. The complaint alleges that a large part of the proceeds of the sale has been distributed and paid by the Spiro Manufacturing Company to the individual defendants herein, each of whom has received part thereof, with knowledge and notice of the breach of trust and violation of agreement which the plaintiff charges against the defendant corporation, and that by reason of this distribution the defendant corporation is without sufficient net assets to pay a judgment for the sum which plaintiff claims is owing to it. The agreement above referred to, in which the plaintiff corporation is designated as the party of the first part and the defendant corporation as party of the second part, contains among others the following provisions: " Whereas the party of the first

part owns and possesses certain patents, tools, parts and appurtenances belonging to the Visigraph typewriting machine; and whereas the party of the second part desires to purchase the same absolutely at a price of ten thousand dollars ($10,000), payment to be made six months after the date hereof, subject nevertheless to certain provisions hereinafter recited relating to prior sales and to certain terms and conditions hereinafter set forth; and whereas the party of the first part is willing to make such sale accordingly; * * * I. The party of the second part hereto agrees to store all the tools, parts and appurtenances to said typewriter machine belonging for a period of six (6) months from the date hereof at its own cost and expense; and the party of the first part shall cause the said tools, parts and appurtenances to be removed to the premises designated by the party of the second part as soon as reasonably may be hereafter, the expense of moving to be borne by the party of the first part and any fire insurance covering the said chattels to be paid for by the party of the first part. * * * III. The party of the second part further agrees to use its best efforts to effect a sale of the patents, tools, parts and appurtenances of said Visigraph machine within said period of six (6) months at a price of not less than twenty-five thousand dollars ($25,000), failing which the party of the second part hereby covenants and agrees itself to complete the said purchase at the end of the six months' period by the payment to the party of the first part of the sum of ten thousand dollars ($10,000), always provided that the said patents, tools, parts and appurtenances are not sold through some other agency under the conditions herein next set forth. * * * VIII. The party of the first part agrees that in the event that the sale hereinafter provided for is consummated on the payment of the ten thousand dollars ($10,000) at the end of the six months' period or should the party of the second part meanwhile bring about a sale at twenty-five thousand dollars ($25,000), it will by proper bill of sale transfer absolute title to the patents, tools, parts and appurtenances, trademarks, name and good will included in the sale to the party of the second part, free from incumbrances and will give to the party of the second part any further necessary assurance of title thereto." The signature of the defendant Charles Spiro appears upon the agreement as president of both corporations. There is no doubt that during the period covered by the contract, viz., from May 26 to November 26, 1919, the Spiro Manufacturing Company was the agent of the plaintiff, authorized to effect a sale of the assets of the plaintiff therein set forth for the sum of not less than $25,000 and charged with the express obligation to use its best efforts to effect a sale thereof at not less than that price. It appears that the defendant corporation, through Frederick L. Spiro, made

various efforts during the summer of 1919 to sell the property, but without success, and that the price which the parties had in mind was anywhere from $25,000 to $40,000. It further appears that while the six months' period designated in the contract still had four weeks to run, the defendant corporation ascertained that the Federal Adding Machine Corporation was in the market for a typewriter. Somewhere around October 29, 1919, Frederick L. Spiro conferred with John P. Hogan, who was sales manager of the Federal Adding Machine Corporation and who had been designated by that company to find a suitable typewriter, to whom, according to Mr. Hogan's testimony, Frederick L. Spiro said that he had a typewriter for sale " for $150,000 or something like that." Hogan testified that he replied: " I am not interested in whether it is $150,000 or $200,000 or $175,000, but what I want is the typewriter and the purchasing of it will be done by somebody else." At the first interview it was arranged that Mr. Spiro should send a sample of the machine as quickly as he could to the office of the Federal Adding Machine Corporation. A demonstration of the Visigraph machine took place in the office of the Federal Adding Machine Corporation a couple of days prior to November 13, 1919. Mr. Hogan testified that this was the second demonstration, and it appears that it was satisfactory to the representatives of the Federal Adding Machine Corporation, although it does not appear that the defendant corporation was so informed at that time. A week or so after November 13, 1919, Frederick L. Spiro had an interview with Mr. De Beltrand, the president of the Federal Adding Machine Corporation, at which conference, according to the latter's testimony, the price of around $175,000 to $200,000 was mentioned, and in answer to the question, "And what did you say? " Mr. De Beltrand testified: " I said we had the cash and we would like to buy for cash, and to make me the lowest price he could and let me have a letter to that effect, which he did." In a letter written on November 24, 1919, two days before the six months' period had expired, the defendant corporation made a formal offer to accept the sum of $175,000 for the property, payable in nine months, or $150,000 in cash. The letter closed as follows: " Time being a very important consideration, as already explained, we will ask you to give us a quick decision, which we trust will be possible before the end of the present month." The submission of this letter was the final act in the negotiations, nothing more being done by any of the defendants to consummate the sale. In the meanwhile Frederick L. Spiro, who conducted the negotiations, made no disclosure of the fact that they were pending to any of the officers, directors or stockholders of the plaintiff corporation other than his father and brothers, individual defendants herein. The

president of the plaintiff corporation was then Walter J. Spiro and he was at the same time treasurer of the defendant corporation. The only other officer of the plaintiff corporation, Albert R. Lesinsky, had no knowledge or information of the negotiations. Left in ignorance of the fact that the defendant corporation, its agent, had made this formal offer to the Federal Adding Machine Corporation in compliance with the request of the president of that company, the plaintiff carried out the contract of May 26, 1919, and sold the assets referred to therein to the defendant corporation for the sum of $10,000. The offer embodied in the letter of November 24, 1919, was accepted by the Federal Adding Machine Corporation, and pursuant to a resolution of its board of directors it sent the sum of $1,000 to the defendant corporation on December 3, 1919, for a ten days' option. This option was exercised before the expiration of the ten days, and the Federal Adding Machine Corporation bought these assets and paid for them $150,000 in cash on December 11, 1919. The law governing the duty of an agent toward his principal has long been firmly established in our jurisprudence. " It is well settled that an agent occupies a fiduciary relation towards his principal, and that he is bound, in the execution of the agency, to act in the most perfect good faith and with loyalty to the interests of his principal, and so sedulously is this principle guarded that all departures from it are esteemed frauds upon the confidence bestowed. An agent will not be allowed to assume any position which is inconsistent with his duty, or to acquire any rights by violation of it." 1 Clark & Skyles Law of Agency, 907–909. " The duty of an agent to act with good faith and loyalty towards his principal includes the duty on the part of the agent to communicate to the principal notice of any facts which come to his knowledge, in the course of the agency, and which may affect the interests of the principal, in order that the latter may take such steps as may be necessary for the protection of his interests." 1 Clark & Sklyes Law of Agency, 934. " It is the duty of the agent to give to his principal reasonable and timely notice of every fact relating to the subject matter of the agency, coming to the knowledge of the agent while acting as such, and which it may fairly be deemed material for the principal to know for the protection or preservation of his interests. This duty may take on a variety of forms. As has been already seen, the duty of loyalty to his principal may require that the agent shall disclose to his principal the existence of adverse interests, either in the agent or in others whom he represents, which are inconsistent with the full and fair performance by the agent of his duty to his principal." 1 Mechem Agency, 993, § 1353. These principles are fundamental to the law of agency and have been applied in a multitude of cases in this and other

jurisdictions. The defendants claim that the defendant corporation, during the six months' period designated in the contract, used its best efforts to effect a sale of the property for not less than $25,000, and that in doing so it performed its full duty toward the plaintiff. They contend that no matter what negotiations between the defendant corporation and any third person were pending on or prior to November 26, 1919, plaintiff could not withdraw from its agreement and refuse to sell the property to the defendant corporation, but was obliged to sell it to the defendant corporation for $10,000 unless on or before November 26, 1919, a prior sale of said property was made to some other person for not less than $25,000. While the agreement provided that if the plaintiff's property was not sold within the six months' period at the said price of not less than $25,000 the defendant corporation should acquire it at the end of said period for the sum of $10,000, the legal effect of the agreement was to make the defendant corporation the agent of the plaintiff during the time covered thereby, and as such the defendant corporation was under the very strict obligation imposed by the law upon a fiduciary. *Uberrima fides*, the most abundant good faith, is the rule which applies to agents. There must be an absence of any concealment or deception whatever. An agent will not be allowed to assume any position which is inconsistent with his duty to be loyal to his principal or to place himself in an attitude of antagonism to the interest of his principal. He will not be allowed to take a position without his principal's knowledge and consent which will have a tendency to cause him to violate his duty and to act in his own interest rather than that of his principal. While the agreement here is of such a nature that a very great amount of confidence is reposed in the fidelity of the defendant corporation, offering to the latter a correspondingly great temptation to profit through concealment, this fact presents no reason for relaxation in the application of the rule, but *a fortiori* requires a rigorous measurement of the conduct of the agent with the requirements of the law. The defendant corporation takes the position that even if it had made a full disclosure of the pending negotiations to the plaintiff, the latter could have done nothing to bring them to a successful culmination within the six months' period designated in the contract. This position disregards the fact that as a matter of law the duty of the defendant corporation to make a full and honest disclosure was absolute and not contingent upon its idea of what the plaintiff could do to accelerate the negotiations and protect its interests. The principal was entitled to know the facts and to be afforded an *opportunity* to take such action as it could in the premises. The defendant corporation knew that while its principal was left in utter ignorance of the pending negotiations it could do nothing, and meanwhile

every passing hour brought the parties nearer to the day when, under the provisions of the contract, the agent could buy for $10,000 the property which two days before the six months' period expired it made a formal offer to sell to a third party for $150,000 in cash. The defendant corporation was certain that so long as knowledge of the facts of the situation was concealed from its principal its opportunity to reap the rich harvest that would follow a successful issue of the pending negotiations could not be interfered with by the plaintiff. *Uberrima fides* dictated a full, complete and undelayed disclosure; self-advantage at the principal's expense dictated that which is condemned by the law — concealment. Perhaps the plaintiff could not have succeeded in hastening the negotiations, but whether it could have done so or not is beside the point. The fact is that the agent's concealment denied to the plaintiff the opportunity to do anything at all. When the offer embodied in the letter of November 24, 1919, was made to the Federal Adding Machine Corporation the defendant corporation was still the agent of the plaintiff. As a matter of law, then, the offer was made for the plaintiff's benefit. The defendant corporation will not be permitted to adopt the comfortable and profitable position that the question as to whether it was then acting for its principal or for itself depended upon a condition subsequent, viz., the date of acceptance of the offer; that if the acceptance had taken place on or before November twenty-sixth, then the offer would have inured to its principal's benefit, but having occurred subsequently, the offer was not for its principal's benefit, but for its own. An agent's fiduciary relation to his principal does not permit the assumption of such a dual role. The defendant corporation having entered into a relation of trust and confidence with the plaintiff may not so lightly cast off the mantle which it voluntarily donned. The offer, at the time it was made, could have been made only for the benefit of the principal, and to say that its acceptance inured to the benefit of an agent that violated its trust is to disregard the fiduciary relation between the parties. The claim of the defendant that the patents covering the Visigraph machine, taken out in 1911 and 1912, were the property of Charles Spiro and not of the plaintiff, is not only inconsistent with the recognition of ownership in the plaintiff contained in the agreement of May 26, 1919, but is irreconcilable with the manifest understanding of Charles Spiro and the other parties interested in the plaintiff corporation, as evidenced by their course of conduct over a period of years prior to the time when this litigation arose. The agreement of 1893 between Charles Spiro and the Columbia Typewriter Company, under which name the plaintiff corporation was organized, provided that so long as the former remained and was

the general manager of the corporation he would assign any and all patents that he might thereafter secure on writing machines and on tools facilitating the manufacture of writing machines. References to the patents contained in the reports of Charles Spiro as president of the plaintiff corporation made in 1913, 1914, 1916, 1917 and 1919 show clearly that these patents were treated all along as the property of the plaintiff corporation and that Charles Spiro himself regarded them as the property of the plaintiff corporation. The defendants endeavored to establish upon the trial that certain inventions made by Mr. Spiro after his resignation and which embodied unpatented improvements on the Visigraph machine were the main inducement to the sale. While Mr. Hoyt testified that the Federal Adding Machine Corporation would not have made the purchase if these inventions had not been included, he admitted on cross-examination that he was not a typewriter man and was not competent to pass upon the question as to which of the additional inventions was embodied in the machine which was demonstrated to the Federal Adding Machine Corporation prior to the purchase. He was plainly unable to identify these inventions at all. On the other hand, Mr. Hogan, who had been delegated by the president of the Federal Adding Machine Corporation to find a suitable typewriter, testified that he did not think that these additional inventions had any bearing upon the purchase whatever. The showing of the defendants on this point is by no means impressive. But even if it were persuasive there is no proof upon which the court could base a finding as to the value of these additional inventions so as to make an allowance for them to the defendants. The property was sold in the aggregate and for a lump sum, no separate and distinct value being placed upon any of it. Under these circumstances the burden rested upon the defendants to show clearly the value of that for which they now claim an allowance. This burden the defendants have not sustained. The plaintiff is entitled to judgment against the defendants requiring the defendant the C. Spiro Manufacturing Company to account to the plaintiff for the proceeds of the sale made by it to the Federal Adding Machine Corporation over and above the sum of $10,000 paid to the plaintiff, and requiring the individual defendants to account to the plaintiff for all moneys received by them out of the proceeds of said sale, and directing that the plaintiff recover of the defendants the sum of $140,000, with interest from December 12, 1919, the liability of each of the defendants Frederick L. Spiro, Walter J. Spiro and William L. Spiro being limited, however, to the sum of $1,000, with interest from said date. Judgment will be rendered accordingly, with costs. The limitation of the liability of each of the defendants Frederick L. Spiro, Walter J. Spiro and

William L. Spiro to the sum of $1,000 each is in accordance with the statement of plaintiff's counsel contained in their brief expressing a willingness to waive any claim against the said defendants excepting for the aforesaid sum received by each of them for alleged services rendered in connection with the sale. Submit proposed findings and judgment.

Judgment accordingly.